## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**RACHEL DELAMAIN, INDIVIDUALLY**      **CIVIL ACTION NO.**
**AND AS MOTHER AND GENERAL**
**GUARDIAN OF W.B.D., A MINOR.**

**VERSUS**                               **SECTION**

**WALMART, INC.**                     **MAGISTRATE**

---

## COMPLAINT

---

**NOW INTO COURT**, through undersigned counsel, come plaintiffs, Rachel Delamain and W.B.D., pursuant to Fed. R. Civ. P. 17(c)(1)(A), both citizens of the State of Louisiana, and who, with respect, plead the following:

1.

Made defendant herein is Walmart, Inc. ("Wal-Mart" or "Defendant"), incorporated under the laws of the State of Delaware and headquartered in Arkansas.

2.

This is an action brought on behalf of plaintiffs, Rachel Delamain (hereinafter, "Plaintiff Mother"), the mother and guardian of W.B.D. (hereinafter, "Plaintiff Child"), a minor, arising out of Defendant's failure to warn about the dangers of prenatal exposure to Paracetamol, also known as Acetaminophen (hereinafter "APAP") and its propensity to cause autism spectrum disorder ("ASD") in children.  As a result, Plaintiff child suffers from ASD, and Plaintiffs have endured significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

**STATEMENT OF PARTIES**

3.

At all material times Plaintiffs have been citizens and residents of East Baton Rouge Parish, Louisiana and the United States.

4.

Wal-Mart is incorporated in Delaware, with its principal place of business in Bentonville, Arkansas.

5.

Wal-Mart is a multinational company involved in the research, development, testing, manufacture, labeling, production, marketing, promotion, and/or sale of APAP through its over-the-counter store brand, "Equate" (hereinafter, the "APAP Products").

6.

Wal-Mart is liable to Plaintiffs for damages they suffered, arising from Defendant's design, manufacture, marketing, labeling, distribution, sale, and placement of the defective APAP Products into the market, effectuated directly and indirectly through its agents, servants, employees, and/or owners, all acting within the course and scope of its agencies, services, employments, and/or ownership.

7.

Wal-Mart is vicariously liable for the acts and/or omissions of its employees and/or agents, who were at all material times acting on behalf of Wal-Mart and within the scope of its employment or agency.

## VENUE AND JURISDICTION

8.

This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiffs and Defendant. See *supra* ¶¶ 3–4.

9.

The amount in controversy exceeds $75,000.

10.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

11.

Defendant is registered to transact business in Louisiana.

## FACTS COMMON TO ALL COUNTS

12.

APAP is widely used by pregnant women to relieve pain during the term of their pregnancy.

13.

APAP was initially discovered in the late 1800's.

14.

APAP was introduced to the US market in 1955 as the first aspirin-free pain reliever. APAP was originally marketed and sold as a product to reduce fever in children, packaged like a red fire truck with the slogan, "for little hotheads."

15.

APAP is sold in billions of units annually in North America alone.

16.

APAP has long been marketed as the safest, and the *only* appropriate, over-the counter pain relief drug on the market for pregnant women.

17.

More than 65% of women in the United States use APAP during pregnancy.

18.

Based upon information and belief, a majority of women who use APAP during pregnancy do so electively for the treatment of headaches, muscle pain, back pain, and infection.

19.

These pregnant women electively choose to take APAP because Defendant has marketed APAP as a safe pain reliever for pregnant women.

20.

However, increasing experimental and epidemiological research shows that prenatal exposure to APAP alters fetal development, which significantly increases the risks of neurodevelopmental disorders, including but not limited to, ASD and ADHD.

21.

Undisturbed development of the human brain in utero is vital to the health and wellness of a child's development. The human brain is vulnerable and extremely sensitive in utero. During this sensitive time-period in utero, certain chemicals have been found to cause permanent brain injury at low exposure levels.

22.

Once ingested by the mother, APAP is known to readily cross the placenta and blood-brain barrier.

23.

ASD is a serious neurological and developmental disorder that affects how people interact with others, communicate, learn, and behave.

24.

There are three functional levels of ASD, with Level 1 requiring support with activities of daily living, Level 2 requiring substantial support with activities of daily living, and Level 3 requiring very substantial support with activities of daily living.

25.

Treatments for ASD include behavioral management therapy, cognitive behavior therapy, joint attention therapies, medications, occupational therapy, physical therapy, social skill training, and speech-language therapy. Treatment for ASD lasts a lifetime, as there is no cure.

26.

ADHD is a chronic neurodevelopmental disorder resulting in attention difficulty, hyperactivity, and impulsiveness.

27.

ADHD begins in childhood and persists through adulthood. ADHD contributes to low self-esteem, troubled relationships, and difficulty with school, work, and familial relationships.

28.

In or around 2018, the Center for Disease Control and Prevention ("CDC") found that 1 in 44 (2.3%) 8-year-old children have been diagnosed with ASD.

29.

This represents an increase from a prior CDC finding that 1 in 68 U.S. children born in 2002 have ASD, which already represented a more than a 100% increase compared with children

born a decade prior.

30.

As of 2019, 8.8% of children had been diagnosed with ADHD, or roughly 325,000 children per year.

31.

Parental awareness and changes in diagnoses do not account for the rapid rise in these diagnoses of neurodevelopmental disorders.

32.

Rather, neurotic exposures, such as prenatal APAP exposure, explain a trending increase in diagnosis.

33.

For years, the scientific community has published studies showing that prenatal ingestion of APAP can cause ASD and ADHD.

34.

For instance, since 2013, there have been six European birth cohort studies, examining over 70,000 mother-child pairs, showing the association between prenatal use of APAP and ASD and ADHD.

35.

At this time, the overall body of scientific evidence shows that prenatal use of APAP can cause ASD and ADHD in the child.

36.

During all relevant times herein, Defendant was engaged in the business of manufacturing and selling the APAP Products in the United States, and the weight of the scientific evidence

available showed prenatal exposure to APAP significantly increases the risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

37.

The scientific evidence regarding the risks of in utero exposure of APAP was available to Defendant, and Defendant knew or should have known that prenatal use of APAP can cause ASD and ADHD.

38.

Based on information and belief, Defendant has concealed the prenatal APAP exposure-neurodevelopmental link from consumers, like Plaintiff Mother, in part by not reporting the link to the FDA, which relies on drug manufacturers to bring new information about a drug to the agency's attention.

39.

Moreover, despite knowing that prenatal use of APAP can cause ASD, Defendant continues to market the APAP Products as the safe pain reliever for pregnant women, making mothers believe they are choosing a safe drug for even minor aches, pains, and headaches.

### **Plaintiff Mother Took APAP Products while Pregnant, and It Caused ASD AND ADHD in Plaintiff Child**

40.

Plaintiff Mother began using the APAP Products in 2017 when she was pregnant with Plaintiff Child.

41.

Plaintiff Mother went to physical therapy over a three-month period during the course of her pregnancy to address lower back pain related with her pregnancy.

42.

Plaintiff took the APAP Products over the course of her pregnancy, and took the recommended dose as pain persisted over this period to address her back pain.

43.

Plaintiff would take the recommended dose of the APAP Products at a time.

44.

Plaintiff Mother believed it was safe for her to take the APAP Products during her pregnancy.

45.

In fact, Plaintiff Mother believed and was told it was safe for her to take APAP while pregnant.

46.

Plaintiff Mother was told she could take APAP freely and without risk.

47.

There is no warning on the APAP Products' labels specifically addressing the risks of ASD if a mother ingests APAP while pregnant.

48.

Had Plaintiff Mother known of the risk of taking APAP while pregnant, specifically that it could cause ASD in her child, she would not have taken the APAP Products.

49.

Plaintiff Child was born on October 3, 2017.

50.

Plaintiff Mother started to have concerns about Plaintiff Child's development when he was

only two years old.

51.

Plaintiff child started to demonstrate signs of socialization and speech delays, which is an indicator of ASD.

52.

Plaintiff Child was ultimately diagnosed with ASD when he was three years old.

53.

Plaintiff Child was also diagnosed with ADHD.

54.

Plaintiff Child has socialization and behavioral challenges as a result of his ASD.

55.

Plaintiff Child's ASD and ADHD has put immeasurable stress on Plaintiff Mother.

56.

Due to the stress and the needs of Plaintiff Child, Plaintiff Mother was forced to quit her job to care for Plaintiff Child.

## COUNT I; LA R.S. 9:2800.51, *ET SEQ.*, FAILURE TO WARN

57.

Plaintiffs incorporate by reference the allegations in all prior paragraphs.

58.

At the time of Plaintiffs' injuries, the APAP Products were defective and unreasonably dangerous to foreseeable consumers, including Plaintiff Mother, because they lacked an adequate warning.

59.

At all relevant times, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, and promoting the APAP Products, which were defective and unreasonably dangerous to consumers, including Plaintiff Mother, because they did not contain adequate warnings or instructions concerning the dangerous characteristics of ingesting APAP during pregnancy. These actions were under the ultimate control and supervision of Defendant. At all relevant times, Defendant registered, researched, manufactured, distributed, marketed, labeled, promoted, and sold the APAP Products within this District and aimed the marketing at the ultimate consumer. Defendant was at all relevant times involved in the retail and promotion of the APAP Products marketed and sold in this District.

60.

Defendant owed a duty to warn of the risks associated with the use of the APAP products.

61.

The APAP Products ingested by Plaintiff Mother during pregnancy were in the same or substantially similar condition as they were when they left possession of the Defendant.

62.

Defendant expected and intended the APAP Products to reach users such as Plaintiff Mother in the condition in which the APAP Products were sold.

63.

Plaintiff Mother did not materially alter the APAP Products prior to ingestion.

64.

Plaintiff Mother ingested the APAP Products as indicated on the APAP Products' labels.

65.

Plaintiff Mother was unaware of the defects and dangers of the APAP Products and was unaware that prenatal exposure increases the risk of brain and behavioral development of children in utero.

66.

The labels on the APAP Products to consumers lack any warning specific to pregnant women. The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff Mother to utilize the products safely and with adequate protection, or decide to not ingest the APAP Products at all.

67.

This alleged failure to warn is not limited to the information contained on the APAP Products' labeling. Defendant was able, in accordance with federal law, to comply with relevant state law by disclosing the known risks associated with APAP through other non-labeling mediums, *i.e.,* promotion, advertisements, public service announcements, and/or public information sources. But, Defendant did not disclose these known risks through any medium.

68.

At all relevant times, Defendant owed a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, and supply the APAP Products; provide proper warnings for the APAP Products; and take such steps as necessary to ensure the APAP Products did not cause users and consumers, and their children, to suffer from unreasonable and dangerous risks. Defendant owed a continuing duty to warn Plaintiff Mother of dangers associated with APAP. Defendant, as a manufacturer, seller, and/or distributor of pharmaceutical

medication, is held to the knowledge of an expert in the field.

69.

At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of the APAP Products because Defendant knew or should have known of the unreasonable risks of ASD and ADHD associated with prenatal exposure to and/or the use of such products.

70.

At all relevant times, Defendant failed and deliberately refused to investigate, study, test, or promote the safety of the APAP Products, or to minimize the dangers to consumers of the APAP Products and to those who would foreseeably use or be harmed by the APAP Products, including Plaintiffs.

71.

Defendant failed to adequately warn consumers, like Plaintiff Mother, about the significant increased risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

72.

Defendant failed to adequately inform reasonably foreseeable consumers, like Plaintiff Mother, of the proper usage of the APAP Products.

73.

Even though Defendant knew or should have known that APAP posed a grave risk of harm to Plaintiff Child, Defendant failed to exercise reasonable care to warn of the dangerous risks associated with use and prenatal exposure.

74.

Plaintiff Mother was exposed to the APAP Products without knowledge of their dangerous characteristics.

75.

At all relevant times, Plaintiff Mother used and/or was exposed to the use of the APAP Products while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

76.

Plaintiff Mother could not have reasonably discovered the defects and risks associated with the APAP Products prior to or at the time of Plaintiff consuming APAP. Plaintiff Mother relied upon the skill, superior knowledge, and judgment of Defendant to know about and disclose serious health risks associated with using the APAP Products.

77.

If Plaintiff Mother had been properly warned of the defects, dangers, and risks associated with prenatal exposure to APAP, Plaintiff Mother would have utilized the APAP Products safely and with adequate protection, or would have decided to not ingest the APAP Products at all.

78.

Defendant is liable to Plaintiffs for injuries caused by Defendant's negligent or willful failure, as described above, to provide adequate warnings or other relevant information and data regarding the appropriate use of the APAP Products and the risks associated with the use of APAP.

79.

As a direct and proximate result of Defendant placing defective APAP Products into the stream of commerce, and Plaintiff Mother's ingestion of the APAP Products during pregnancy,

Plaintiff Child was exposed to APAP prenatally, causing him to develop ASD and ADHD.

80.

As a direct and proximate result of Defendant placing defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

## COUNT II: NEGLIGENCE

81.

Plaintiffs incorporate by reference the allegations in all prior paragraphs.

82.

Although Defendant had a duty to use reasonable care in testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, promoting, and preparing written instructions and warnings for the APAP Products, Defendant failed to do so.

83.

Defendant, directly or indirectly, caused the APAP Products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff Mother. At all relevant times, Defendant registered, researched, manufactured, distributed, marketed, promoted, and sold the APAP Products within this district and aimed at a consumer market within this district.

84.

Defendant knew, or in the exercise of reasonable care should have known, that the APAP Products were defectively and unreasonably designed and/or manufactured, and/or marketed, and were unreasonably dangerous and likely to injure persons that were prenatally exposed to them.

Defendant knew or should have known that Plaintiff Mother was unaware of the dangers and defects inherent in the APAP Products when she was ingesting them during her pregnancy with Plaintiff Child.

85.

At all relevant times, Defendant had a duty to exercise reasonable care in the marketing, advertisement, promotion, and sale of the APAP Products. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using APAP during pregnancy and appropriate, complete, and accurate warnings concerning the potential adverse effects of APAP and, in particular, the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP.

86.

At all relevant times, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of APAP ingestion while pregnant and, specifically, the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP.

87.

Defendant failed to provide any kind of warning to pregnant consumers, like Plaintiff Mother, about the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP.

88.

Accordingly, at all relevant times, Defendant knew or, in the exercise of reasonable care, should have known that use of the APAP Products could cause Plaintiffs' injuries, and thus, create

a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

89.

As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, labeling, supply, promotion, advertisement, packaging, sale, and distribution of the APAP Products, in that Defendant manufactured and produced defective APAP Products, which carry the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP; knew or had reason to know of the defects inherent in the APAP Products; knew or had reason to know that a user's or consumer's use of the APAP Products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.

90.

Defendant had a duty to disclose the truth about the risks associated with APAP in its promotional efforts outside of the context of labeling. Defendant was negligent in its promotion of APAP outside of the labeling context by failing to disclose material risk information as part of its promotion and marketing of the APAP Products, including through the internet, television, and print advertisements.

91.

Despite Defendant's ability and means to investigate, study, and test the APAP Products and to provide adequate warnings, Defendant failed to do so. Indeed, Defendant wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of APAP.

92.

Defendant's negligence included:

a.  Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the APAP Products while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of APAP and the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP, and, consequently, the risk of serious harm associated with human use of APAP during pregnancy;

b.  Failing to undertake sufficient studies and conduct necessary tests to determine whether the APAP Products were safe for its intended consumer use and unborn children;

c.  Failing to provide adequate instructions, guidelines, and safety precautions to those persons Defendant could reasonably foresee would use the APAP Products;

d.  Failing to disclose to Plaintiff Mother, users, consumers, and the general public that use of APAP during pregnancy presents severe risks of neurodevelopmental disorders in children exposed to APAP prenatally;

e.  Failing to warn Plaintiff Mother, users, consumers, and the general public that the APAP Products' risk of harm was unreasonable and that there were safer and effective alternative medications or treatments available to Plaintiff Mother and other users and/or consumers;

f.  Representing that the APAP Products were safe for their intended purposes for pregnant women when, in fact, Defendant knew or should have known the APAP Products were not safe for their intended purposes;

g.  Declining to make or propose any changes to the APAP Products' labeling or other promotional materials that would alert users, consumers, and the general public of

the risks of APAP, including to pregnant women;

h.  Advertising, marketing, and recommending the use of the APAP Products, while concealing and failing to disclose or warn of the dangers known by Defendant to be caused by the use of or exposure to APAP;

i.  Continuing to disseminate information to its consumers and the general public, which indicates or implies that the APAP Products are not unsafe for pregnant consumer use; and

j.  Continuing the manufacture and sale of the APAP Products with the knowledge that the APAP Products were unreasonably unsafe and dangerous.

93.

Defendant knew and/or should have known that it was foreseeable that children such as Plaintiff Child would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of the APAP Products to consumers, like Plaintiff Mother.

94.

Plaintiff Mother did not know the nature and extent of the injuries that could result in her child from the intended use of and/or exposure to APAP prenatally.

95.

Defendant's negligence was the proximate cause of Plaintiffs' injuries, i.e., absent Defendant's negligence, Plaintiff Child would not have developed ASD and ADHD.

96.

Defendant's conduct, as described above, was reckless. Defendant regularly risked exposing Plaintiff Mother to the APAP Products while pregnant with Plaintiff Child, with full knowledge of the dangers of the APAP Products and that it could cause ASD and ADHD in

Plaintiff Child. Defendant made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff Mother.

97.

As a direct and proximate result of Defendant placing the defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

**COUNT III: LA R.S. 9:2800.51, *ET SEQ.*, BREACH OF EXPRESS WARRANTY**

98.

Plaintiffs incorporate by reference the allegations in all prior paragraphs.

99.

At all material times, Defendant manufactured, marketed, sold, distributed, and otherwise placed into the stream of commerce the APAP Products. These actions were under the ultimate control and supervision of Defendant.

100.

In advertising, marketing, and promoting the APAP Products to consumers, like Plaintiff Mother, Defendant expressly warranted that the APAP Products were safe for use and reasonably fit for their intended purposes. In advertising, marketing, and otherwise promoting the APAP Products, Defendant intended for pregnant consumers to rely upon its representations regarding safety and fitness, in an effort to induce them to purchase and consume the APAP Products during pregnancy to relieve pain.

101.

Defendant expressly warranted to Plaintiff Mother and pregnant consumers that the APAP

Products were safe for ingestion during pregnancy.

102.

Defendant had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of the APAP Products, including a duty to:

a.    Ensure that the APAP Products did not cause users and their unborn children unreasonably dangerous side effects;

b.    Warn of dangerous and potentially incurable side effects; and

c.    Disclose adverse material facts, such as the true risks associated with the use of and exposure to APAP during pregnancy, when making representations to users, consumers, and the general public, including Plaintiff Mother.

103.

Defendant had the ability to properly disclose the risks associated with APAP usage during pregnancy through multiple channels, not just labeling.

104.

At all relevant times, Defendant expressly represented and warranted to the purchasers of the APAP Products, by and through statements made by Defendant in labels, publications, brochures, and other written materials intended for consumers and the general public, that the APAP Products were safe to human health and the environment, effective, fit, and proper for their intended use. Defendant advertised, labeled, marketed, and promoted the APAP Products, representing the quality to consumers and the public in such a way as to induce their purchases or use, thereby making an express warranty that the APAP Products would conform to the representations.

105.

The representations about the APAP Products, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

106.

Defendant breached express representations and warranties made to Plaintiff Mother, with respect to the APAP Products, including the following:

a. Defendant represented through its labeling, advertising, and marketing materials that the APAP Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of APAP and by expressly limiting the risks associated with use within its warnings and labels; and

b. Defendant represented that the APAP Products were safe for use and intentionally concealed information that demonstrated that APAP carries the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP, and that the APAP Products, therefore, were not safer than alternatives available on the market.

107.

Plaintiff Mother detrimentally relied on the express warranties and representations of Defendant concerning the safety and/or risk profile of APAP in deciding to purchase the APAP Products. Plaintiff Mother reasonably relied upon Defendant to disclose known defects, risks, dangers, and side effects of APAP. Plaintiff Mother would not have purchased or used the APAP Products had Defendant properly disclosed the risks associated with the APAP Products, either

through advertising, labeling, or any other form of disclosure.

108.

Plaintiff Mother had no knowledge of the falsity or incompleteness of Defendant's statements and representations concerning the APAP Products.

109.

Plaintiff Mother used and/or was exposed to APAP as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendant.

110.

Had the warnings, labels, advertisements, or promotional material for the APAP Products accurately and adequately set forth the true risks associated with the use of such Products, including Plaintiffs' injuries, rather than expressly excluding such information, and warranting that the APAP Products were safe for their intended use, Plaintiffs could have avoided the injuries complained of herein.

111.

As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

## COUNT IV: BREACH OF IMPLIED WARRANTY

112.

Plaintiffs incorporate by reference the allegations in all prior paragraphs.

113.

At all material times, Defendant manufactured, marketed, sold, distributed, and otherwise

placed the APAP Products into the stream of commerce.

114.

At all material times, Defendant intended for the APAP Products to be consumed and ingested by pregnant women, like Plaintiff Mother; and Defendant impliedly warranted that the APAP Products and their component parts were of merchantable quality, safe, fit for such use, and adequately tested.

115.

Defendant was aware that consumers, including Plaintiff Mother, would consume and ingest the APAP Products as directed by the Products' labels and promotional materials. Therefore, Plaintiff was a foreseeable user of the APAP Products.

116.

But Defendant failed to disclose that APAP has dangerous propensities when used as intended and that use of the APAP Products carries an increased risk of developing severe injuries, including Plaintiff Child's injuries.

117.

The APAP Products were expected to reach, and did in fact, reach consumers, including Plaintiff Mother, without substantial change in the condition in which they were manufactured and sold by Defendant.

118.

Plaintiff Mother was an intended beneficiary of the implied warranties made by Defendant to purchasers of the APAP Products.

119.

In reliance upon Defendant's implied warranties, Plaintiff Mother used the APAP Products

as indicated, and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

120.

Defendant breached its implied warranties to Plaintiffs in that the APAP Products were not of merchantable quality, nor were they safe or fit for their intended use or adequately tested.

121.

The harm caused by the APAP Products far outweighed their benefit, rendering the APAP Products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

122.

As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

**COUNT V: NEGLIGENT MISREPRESENTATION**

123.

Plaintiffs incorporate by reference the allegations in all prior paragraphs.

124.

Defendant owed a duty to accurately and truthfully represent to consumers, including Plaintiff Mother, and the public that the APAP Products had not been adequately tested and found to be a safe and effective treatment for pregnant women. Defendant breached that duty as its representations were false.

125.

Defendant failed to exercise ordinary care in the representations concerning the APAP

Products while Defendant was involved in its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendant negligently misrepresented the APAP Products' high risk of unreasonable and dangerous adverse side effects.

126.

Defendant also breached its duty in representing to Plaintiff Mother that the APAP Products had no serious side effects when ingested during pregnancy.

127.

As a foreseeable, direct, and proximate result of Defendant's negligent misrepresentations, Defendant knew or had reason to know that the APAP Products had been insufficiently tested or had not been tested at all; and that they lacked adequate and accurate warnings, and created a high risk, or a higher than acceptable reported and represented risk, of adverse side effects. Those side effects include neurodevelopmental disorders in children, such as ASD and ADHD.

128.

As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

## **PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendant for the following relief in accordance with applicable law and equity:

i. Compensatory damages to Plaintiffs for past, present, and future damages, including pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, permanent impairment, mental pain and suffering, loss of enjoyment of life, health and

medical care costs, lost wages, economic damages, together with interest and costs as provided by law;

ii.      All costs of these proceedings;

iii.    Prejudgment interest on all damages as allowed by law; and

iv.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues pleaded herein.

Respectfully submitted,

**COLVIN SMITH MCKAY & BAYS**

By: ___/s/ *James H. Colvin, Jr*._____
JAMES H. COLVIN, Trial Attorney, La Bar Roll #21532
COLE B. SMITH, La. Bar Roll #30063
J. CLAYTON CARAWAY, La. Bar Roll #37983
900 Market Street, Suite 300 (71101)
Post Office Box 1831 (71166-1831)
Shreveport, Louisiana
Telephone:      (318) 429-6770
Facsimile:      (318) 429-6771
Email: jcolvin@colvinfirm.com
        csmith@colvinfirm.com
        ccaraway@colvinfirm.com

*Attorneys for Plaintiffs, Rachel Delamain and W.B.D.*